**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| _____ ) | | |
| AMY TAYLOR | ) | Civil Action No.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CONSTITUTION LUBE, INC.; | ) | |
| KURT E. PEDERSON, IN HIS | ) | |
| OFFICIAL CAPACITY; | ) | |
| KURT E. PEDERSON, IN HIS | ) | |
| INDIVIDUAL CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ ) | | January 6, 2010 |

## COMPLAINT

### Preliminary Statement

Plaintiff, Amy Taylor, ("Plaintiff"), by and through her attorney, alleges the

following against Defendant, Constitution Lube, Inc., (hereinafter "Constitution Lube");

Defendant Kurt E. Pederson, in his official capacity (hereinafter "Pederson officially");

and Defendant Kurt E. Pederson, in his individual capacity (hereinafter "Pederson

individually").

## Jurisdiction and Venue

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §2000e, *et seq.*); specifically 42 U.S.C. §2000e-2(a)(1), which makes it unlawful for an employer to discriminate against any individual because of such individual's sex; and to redress deprivation of rights secured by Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a).

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331(federal question), 28 U.S.C. §1343, and 42 U.S.C. §2000e-5(f).

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b), in that the unlawful employment practices complained of occurred within this district, and the Plaintiff resides herein.

4. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. §1367, as these claims arise out of the same transaction and occurrence as Plaintiff's federal claims.

5. Costs, expert fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. On or about December 17, 2008, Plaintiff filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of state and

federal anti-discrimination laws as set forth herein. On November 4, 2009, the EEOC issued a Notice of Right to Sue, EEOC Charge No.: 16A-2009-00433. On November 23, 2009, the CCHRO issued a Release of Jurisdiction, CHRO Case No. 0920243.

## Parties

7. Plaintiff is a citizen for purposes of protective statutes; is a resident of the County of Hartford, State of Connecticut, and was employed by Constitution Lube from on or about October 1, 2005 to on or about October 30, 2008.

8. Defendant, Constitution Lube, Inc., (hereinafter "Constitution Lube") is and was a corporation doing business in Hartford County, State of Connecticut. Constitution Lube has and does employ in excess of the statutory required number of employees in interstate commerce for purposes of Title VII.

9. At all times material herein, Defendant Kurt E. Pederson is and was the President and Chief Executive Officer of Defendant, Constitution Lube. At all times material herein Defendant Kurt E. Pederson is and was an owner and/or officer and/or partner and/or director and/or agent and/or employee of Defendant Constitution Lube. Defendant Kurt E. Pederson is being sued in his official and individual capacities.

## **Statement of Claim**

10. Plaintiff was employed by Constitution Lube as a manager in Constitution Lube's Southington, Connecticut store.

11. Virtually every time he visited the Southington, Connecticut store, Mr. Kurt E. Pederson, the President and Chief Executive Officer of Constitution Lube, sexually harassed the Plaintiff and all of the other female employees by engaging in a continuous and ongoing intimidating, hostile, offensive and unwelcome course of conduct and actions, including, but not limited to, those alleged herein.

12.  Mr. Pederson frequently addressed Plaintiff and the other female employees using sexual innuendo. Mr. Pederson did not speak in this manner to any of the male employees. Mr. Pederson would speak to Plaintiff and the other female employees using sexual innuendo within earshot of male employees and customers.

13.  Virtually every time he visited the Southington, Connecticut store, Mr. Pederson touched and groped the Plaintiff and the other female employees by rubbing their backs and shoulders.  Mr. Pederson touched and groped the Plaintiff and the other female employees in full view of the male employees and customers.

14. During Plaintiff's employment, she attended approximately seventy five manager meetings at Constitution Lube's Wethersfield, Connecticut offices. At most times, Plaintiff was either the only female or at most one of three females at manager

meetings. There were usually ten to twelve males present at manager meetings. In the course of about twenty five of the seventy five manager meetings that Plaintiff attended, Mr. Pederson made comments with an explicit sexual connotation.  When Mr. Pederson made the comments, many of the male managers would state "I cannot believe he said that", in reference to Mr. Pederson.

15. In January, 2007, Plaintiff hired Ms. Jessica Easler as a cashier in the Southington, Connecticut store. Ms. Easler suffered from a bad eczema condition. In July or August, 2007, Ms. Easler had a large red mark on her neck. Upon seeing Ms. Easler, Mr. Pederson made a sexually connotated remark to her in the presence of Plaintiff and other employees.  Plaintiff was caused to email Mr. Pederson complaining about his conduct towards Ms. Easler. Only after Plaintiff's email, did Mr. Pederson indicate that his remark was inappropriate; and the Plaintiff, rather than Mr. Pederson himself, was caused to directly relay an apology to Ms. Easler. Ms. Easler is one of five female employees at the Southington, Connecticut store who was a recipient of continuous unwanted touching and groping by Mr. Pederson.

16. In or about August, 2008, Plaintiff was on the telephone with Mr. Charles Markunas, her supervisor, who was driving in a car with Mr. Pederson. Plaintiff remarked to Mr. Markunas that business was slow. Mr. Markunas started joking that Plaintiff was complaining. Plaintiff then heard Mr. Pederson say "tell her to put her big

girl panties on". Plaintiff, upon hearing Mr. Pederson's remark, promptly hung up the telephone.  At the next manager meeting, Mr. Pederson made a reference to the said remark claiming it was his new favorite phrase.

17.  Another employee, Ms. Jada Bolzanella complained to Plaintiff about Mr. Pederson touching and groping her. Plaintiff reported Ms. Bolzanella's complaint and the same complaints of three other employees to her supervisor, Mr. Charles Markunas.

18.  In addition to the Plaintiff, Ms. Easler, and Ms. Bolzanella; two other employees of Constitution Lube, Ms. Evelyn Devin, and Ms. Jillian Banks, were also recipients of unwanted touching and groping by Mr. Pederson.

19. Plaintiff complained to her supervisor, Mr. Markunas, about Mr. Pederson's touching and groping on at least two occasions. One complaint was in person and the other complaint was by way of telephone.  When Plaintiff complained to Mr. Markunas in person, he had no reaction. He said nothing and moved on to another subject. When Plaintiff complained to Mr. Markunas by telephone, he told Plaintiff that each person complaining had to do so by a signed writing, indicating her name. This requirement intimidated everyone, including the Plaintiff, and they all backed down, because they wanted to file their complaints against Mr. Pederson without indicating their names.

20. At one point, four of Plaintiff's female employees complained to her. Their comments were "he's creepy", "why does he always have to do that". In or about

December, 2007, Plaintiff had everyone in her office and told them that she had to do something about the touching and grouping by Mr. Pederson. The female employees stated to Plaintiff that they did not want to get in trouble because of it.

21. At one point Ms. Victoria Schumsky, an employee who worked at Constitution Lube's Wethersfield, Connecticut location, complained to Plaintiff that Mr. Pederson touched and groped her sister, Ms. Jennifer Schumsky, also an employee in Wethersfield, on almost a daily basis; was always inviting Jennifer to accompany him to hotels at lunchtime, and frequently spoke to her in a sexually suggestive manner.

22. Four male employees who worked at the Southington, Connecticut location also complained to Plaintiff about Mr. Pederson's touching and groping of the female employees.

23. On or about October 15, 2008, Plaintiff attended a regular manager's meeting in Constitution Lube's Wethersfield, Connecticut office. In addition to Plaintiff, there were approximately twelve to fifteen other persons in the room, all of whom were male. Plaintiff was the only female at the manager meeting.

24. Mr. Pederson stated to all present that he was going to show a video and that he wanted "to gauge opinion on it". Plaintiff was seated at a table in the end seat next

to Constitution Lube's District Manager, Mr. Christopher Hood. Mr. Hood had set up his laptop computer to a projection machine. Mr. Hood also placed his laptop computer directly in front of the Plaintiff.

25.   While Plaintiff was seated at the table before the computer, Mr. Hood was seated very closely to Plaintiff's right. Behind the table to the back of the Plaintiff was shelving. The space between the table and the shelving was about arms length. Mr. Pederson was standing at a forty-five degree angle to Plaintiff's left side. Mr. Pederson's thigh was in contact with the Plaintiff's chair. If Plaintiff had turned her head to her left, her face would have made contact with Mr. Pederson's crotch area.

26.   Mr. Pederson then asked Plaintiff to watch a video on the computer. Besides Mr. Pederson and Mr. Hood, Plaintiff was the only person in the room who could see the video on the laptop set up by Mr. Hood directly in front of her.

27. Mr. Hood brought up a "YouTube" screen on the laptop computer. The video displayed the title "Amy G. Plays the Kazoo". Mr. Hood played the video at Mr. Pederson's request. Before Mr. Hood clicked the "play" indicator, Plaintiff, whose first name is Amy, asked Mr. Pederson if Amy G. was Amy Grant, the Christian rock singer. Mr. Pederson thereupon snickered at Plaintiff and said, "no, you'll see".

28. The video showed a woman who put her hands under her dress and pulled skimpy pink bikini panties down to her ankles. The panties remained around her ankles

on the floor. She then put something up under her dress between her legs. It was apparently the kazoo. A sound came from under her dress that was distorted at first. Her legs and hips moved while the sound played. The sound then became more musically clear as she continued to gyrate her hips. The woman was apparently playing the kazoo with her vagina.

29. After about two minutes of the video play, Mr. Hood turned off the video on his own. If Mr. Hood had not turned off the video on his own, it would have continued to play.

30.  Plaintiff was shocked, humiliated and embarrassed to be shown the video at the managers meeting. After the video was turned off, Mr. Pederson asked Plaintiff what she thought of the video. Plaintiff told Mr. Pederson that the video was completely inappropriate. Mr. Charles Markunes, a supervisor of Plaintiff, was seated to the right of Mr. Hood while the video was played. After Plaintiff told Mr. Pederson that the video was inappropriate, Mr. Markunas laughed and said that he had seen the video before. In response to Mr. Markunas, Mr. Pederson then said, "don't worry guys, we will watch after she leaves".

31.  Immediately thereafter, Mr. Pederson handed out the written meeting agenda and proceeded to conduct the manager meeting as if nothing had happened. Sales and store performance issues were discussed for the next one and one-half

hours. Plaintiff was very upset and extremely uncomfortable and had difficulty remaining at the manager meeting.  Mr. Pederson then directed Mr. Hood to start a web seminar on discrimination and sexual harassment training that was projected onto a wall board for all to see. Prior to this point, Plaintiff had absolutely no idea that sexual harassment training was part of the agenda of the manager meeting. Mr. Pederson made no further mention of the video that was shown to the Plaintiff and made no remark that he was considering to use it as part of sexual harassment training.

32.  Immediately following the October 15, 2008, manager meeting, Plaintiff left the Wethersfield site and returned to the Southington Store whereupon she emailed Mr. Christian Petrelli, the Chief Operating Officer of Constitution Lube, regarding the YouTube video incident.

33.  Later the same day Mr. Petrelli telephoned the Plaintiff and defended Mr. Pederson's actions by telling Plaintiff that there was no malice in Mr. Pederson's conduct. Plaintiff was shocked by Mr. Petrelli's attempt to rationalize Mr. Pederson's conduct.

34. Following Plaintiff's complaint of the incident of October 15, 2008, Constitution Lube directed its managers to refrain from speaking to Plaintiff. Constitution Lube told its managers that they were to have no contact with the Plaintiff whatsoever until further notice. Another manager, Mr. Lawrence Scott was scheduled to meet with

Plaintiff on October 15, 2008 to train employees. Mr. Scott told Plaintiff that he was instructed by Constitution Lube to have no contact with her.

35.   Shortly following the October 15, 2008, incident, Plaintiff spoke to Mr. Sean Porcher, a partner of Constitution Lube. Mr. Porcher requested that Plaintiff not hire an attorney.

36.   Plaintiff is informed and believes, and thereon alleges, that other managers, and/or owners and/or officers and/or partners and/or directors of Constitution Lube were aware for some time before the incident of October 15, 2008, that Mr. Pederson was engaging in the sexually harassing conduct alleged herein, but failed to take the appropriate corrective action necessary to ensure that he ceased such conduct.

37. On or about October 28, 2008, Constitution Lube, presented Plaintiff with a choice to remain in the Southington location as an assistant manager with a pay cut of one-half of her then salary or be transferred to the Bristol, Connecticut location and keep her same salary.

38. Plaintiff is informed and believes, and thereon alleges that at the time this choice was presented to her by Constitution Lube, that Constitution Lube knew that the Bristol location was slated for closing. The Bristol location in fact closed in December, 2008.

39. Constitution Lube's actions as herein set forth caused Plaintiff's constructive discharge from her position on October 30, 2008.

**COUNT ONE: Violation of Title VII by Defendant Constitution Lube Based On Sex (42 U.S.C. §2000e, *et seq.*).**

1- 39. Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

40. The Defendant, Constitution Lube, subjected the Plaintiff to the above-described unwelcome touching, groping, conduct, and harassment, which unwelcome touching, groping, conduct, and harassment was based on the Plaintiff's sex.

41. The above-described unwelcome sexual harassment of the Plaintiff by Defendant, Constitution Lube, was severe or pervasive and created an intimidating, hostile or offensive work environment which interfered with Plaintiff's emotional well-being.

42.  Defendant, Constitution Lube, at all times relevant hereto, had actual knowledge of the above-described unwelcome touching, groping, conduct, and harassment of the Plaintiff.

43. As a result of Defendant Constitution Lube's unwelcome touching, groping, conduct and harassment of the Plaintiff as aforesaid, Plaintiff has suffered actual damages including, but not limited to attorney fees and costs of suit.

44. As a further result of Defendant Constitution Lube's unwelcome touching, groping, conduct, and harassment of the Plaintiff as aforesaid, Plaintiff has been caused to and did suffer and continues to suffer from emotional distress consisting of outrage, shock and humiliation reasonably likely to occur based on the sexual harassment she experienced.

45. Defendant, Constitution Lube, by engaging in the aforementioned continuous unwelcome touching, groping, conduct, and harassment of the Plaintiff, and other female employees, acted with willful and conscious disregard of Plaintiff's rights under Title VII, thereby justifying an award of punitive and exemplary damages.

**COUNT TWO: Violation of Title VII by Defendant Constitution Lube Based On Retaliation (42 U.S.C. §2000e-3(a), *et seq.*).**

1-45. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

46. Constitution Lube's actions in directing its managers to have no contact with Plaintiff following the incident of October 15, 2008; and, on October 28, 2008, its actions in presenting Plaintiff with a choice of remaining in the Southington location with a fifty percent salary cut or of transferring to the Bristol store that Constitution Lube knew was slated for imminent closing, were in retaliation for Plaintiff's objecting to and opposing discriminatory and illegal conduct on the part of Constitution Lube, in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a).

47. Defendant, Constitution Lube, by retaliating against the Plaintiff as aforesaid, acted with willful and conscious disregard of Plaintiff's rights under Title VII, thereby justifying an award of punitive and exemplary damages.

**COUNT THREE: Violation of Conn. Gen. Stat. Sec. 46a-60(a)(8) as against Constitution Lube.**

1-47. Plaintiff realleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

48.  By engaging in the continuous unwelcome touching of the Plaintiff,  groping of the Plaintiff, and conduct of a sexual nature towards the Plaintiff, as aforesaid; Constitution Lube has harassed the Plaintiff on the basis of sex, in violation of Section 46a-60(a)(8) of the Connecticut Fair Employment Practices Act.

49. Plaintiff seeks punitive and exemplary damages for Constitution Lube's willful and wanton violation of Conn. Gen. Stat. Sec. 46a-60(a)(8).

**COUNT FOUR: Violation of Conn. Gen. Stat. Sec. 46a-60(4) as against Constitution Lube.**

1-49. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

50.  Constitution Lube's actions in directing its managers to have no contact with Plaintiff following the incident of October 15, 2008; and, on October 28, 2008, its actions in presenting Plaintiff with a choice of remaining in the Southington location with a fifty percent salary cut or of transferring to the Bristol store that Constitution Lube knew was slated for imminent closing, were in retaliation for Plaintiff's objecting to and opposing discriminatory and illegal conduct on the part of Constitution Lube, in violation of Section 46a-60(4) of the Connecticut Fair Employment Practices Act.

51. Plaintiff seeks punitive and exemplary damages for Constitution Lube's willful and wanton violation of Conn. Gen. Stat. Sec. 46a-60(4).

**COUNT FIVE: Intentional Infliction of Emotional Distress against Constitution Lube and Pederson Officially.**

1-51. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 as if fully set forth herein.

52. Constitution Lube, by and through its agent, President and Chief Executive Officer, Kurt E. Pederson; and Defendant Pederson Officially, committed actions that were extreme and outrageous, and/or made with the intention of causing Plaintiff to suffer emotional distress.

53. Specifically, Mr. Pederson knew that he had for years engaged in the unwelcome touching and groping of the Plaintiff; and then, on October 15, 2008, at a company managers meeting, he tricked and deceived Plaintiff into watching a pornographically themed video titled with Plaintiff's first name, when she was the only female in a room of about twelve to fifteen male managers, and did so while positioning his thigh and crotch area unreasonably close to the Plaintiff's person, and did so while joking about the Plaintiff's reaction with other males who were present.

54. Constitution Lube, by and through its agent; President and Chief Executive Officer, Kurt E. Pederson; and Defendant Pederson Officially, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of its conduct.

16

55. The foregoing conduct did in fact cause Plaintiff to suffer severe emotional distress, and as a proximate result of said conduct, Plaintiff did suffer and continues to suffer from emotional distress consisting of pain, discomfort, outrage, shock, anxiety, and humiliation reasonably likely to occur based on the sexual harassment she experienced.

56.  The aforesaid conduct of Constitution Lube, by and through its agent; President and Chief Executive Officer, Kurt E. Pederson; and Defendant Pederson Officially, was willful, wanton, and malicious warranting an award of punitive damages.

**COUNT SIX: Battery against Constitution Lube and Pederson Officially.**

1-56. Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

57. Constitution Lube, by and through its agent, President and Chief Executive Officer, Kurt Pederson; and Defendant Pederson Officially, engaged in harmful or offensive physical contact with the Plaintiff by touching and groping Plaintiff while Plaintiff was engaged in the performance of her duties as a manager at Defendant Constitution Lube.

58. Defendants, in engaging in the aforementioned harmful or offensive physical contact with the Plaintiff intended to cause Plaintiff to suffer the harmful or offensive contact.

59. As a result of the Defendants harmful or offensive contact with the Plaintiff, the Plaintiff has suffered and continues to suffer damages.

60.  Defendants harmful or offensive contact with the Plaintiff as aforesaid, was willful, wanton, and malicious warranting an award of punitive damages.

**COUNT SEVEN: Intentional Infliction of Emotional Distress against Pederson Individually.**

1-60. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

61. Defendant Pederson Individually, committed actions that were extreme and outrageous, and/or made with the intention of causing Plaintiff to suffer emotional distress.

62. Specifically, Mr. Pederson knew that he had for years engaged in the unwelcome touching and groping of the Plaintiff; and then, on October 15, 2008, at a company managers meeting, he tricked and deceived Plaintiff into watching a pornographically themed video titled with Plaintiff's first name, when she was the only

female in a room of about twelve to fifteen male managers, and did so while positioning his thigh and crotch area unreasonably close to the Plaintiff's person, and did so while joking about the Plaintiff's reaction with other males who were present.

63. Defendant Pederson Individually, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his conduct.

64. The foregoing conduct did in fact cause Plaintiff to suffer severe emotional distress, and as a proximate result of said conduct, Plaintiff did suffer and continues to suffer from emotional distress consisting of pain, discomfort, outrage, shock, anxiety, and humiliation reasonably likely to occur based on the sexual harassment she experienced.

65.  The aforesaid conduct of Defendant Pederson Individually, was willful, wanton, and malicious warranting an award of punitive damages.

**COUNT EIGHT: Battery against Pederson Individually.**

1-65. Plaintiff realleges and incorporates by reference paragraphs 1 through 65 as if fully set forth herein.

66. Defendant Pederson Individually, engaged in harmful or offensive physical contact with the Plaintiff by touching and groping Plaintiff while Plaintiff was engaged in the performance of her duties as a manager at Defendant Constitution Lube.

67. Defendant Pederson Individually, in engaging in the aforementioned harmful or offensive physical contact with the Plaintiff intended to cause Plaintiff to suffer the harmful or offensive contact.

68. As a result of the harmful or offensive contact with the Plaintiff by Defendant Pederson Individually, the Plaintiff has suffered and continues to suffer damages.

69.  The harmful or offensive contact with the Plaintiff by Defendant Pederson Individually, as aforesaid, was willful, wanton, and malicious warranting an award of punitive damages.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Court to:

1. Issue a declaratory judgment that Defendant Constitution Lube's acts, policies and practices complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, specifically, 42 U.S.C. §2000e-2(a)(1), and 42 U.S.C. §2000e-3(a);

2. Issue a declaratory judgment that Defendant Constitution Lube's acts, policies and practices complained of herein violated the Connecticut Fair Employment Practices Act, specifically, C.G.S. §46a-60(a)(8), and C.G.S. §46a-60(4);

3. Award her compensatory and punitive damages, pursuant to 42 U.S.C. §1981a, and C.G.S. §46a-104;

4. Grant her all additional out-of-pocket expenses, and such other appropriate elements of damages to which she may show herself entitled;

5. Award compensatory damages pursuant to Connecticut common law;

6. Award punitive damages pursuant to Connecticut common law;

7. Grant her recovery of reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 and C.G.S. §46a-104;

8. Grant her such additional relief as the Court deems just and proper.

**Jury Demand**

Plaintiff hereby demands a jury trial.

Dated at Hartford, Connecticut, this 6th day of January, 2010.

PLAINTIFF
AMY TAYLOR

By /s/  Jeanette T. Chambers
Jeanette T. Chambers, Esq.
Chambers Law Offices, LLC
179 Allyn Street, Suite 305
Hartford, CT 06103
Telephone: (860) 278-8126
Fax: (860) 760-6222
chamberslawoffices@att.net
Federal Bar No.: ct05563